[Civ. No. 54576. Second Dist., Div. Four. May 14, 1979.]

MARJORIE B. COEFIELD, Plaintiff and Respondent, v.
WILLIAM J. COEFIELD, Defendant and Respondent;
EVA R. COEFIELD, Movant and Appellant.

## Counsel

Herb Wiener for Movant and Appellant.

Bruce M. Boogaard for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

## Opinion

**KINGSLEY, Acting P. J.—** The putative wife[1] of William J. Coefield, deceased, moved, pursuant to section 4515 of the Civil Code, for an order directing the entry of a final decree of divorce of the marriage of Marjorie and William Coefield, nunc pro tunc as of June 4, 1961. The motion was denied; she has appealed; we reverse.

---

[1] It is not contested that the facts of her relationship with William give to Eva the status recognized in California, of a putative wife.

The facts of the case are undisputed. Marjorie and William were married on June 20, 1935. They lived together, as husband and wife, until an interlocutory decree of divorce was entered on June 3, 1960. Ten days earlier, on May 27, 1960, Eva and William were married, and they lived together, as husband and wife, until William's death on February 24, 1974. No final decree of divorce has yet been entered in the action between Marjorie and William.

It is conceded by Marjorie that, acting under section 4515 and its predecessor statute, the courts have entered nunc pro tunc decrees for the benefit of a second spouse, where to do so would serve to validate her marriage to the husband in the divorce action. She urges, however, that the facts of this case show that Eva has no legitimate interest to be served by the nunc pro tunc entry. We disagree.

## I

We agree with Marjorie that, without more, the nunc pro tunc decree could not give to Eva the status of legal widow if only the California law of marriage is looked to. The statute requires that, in order for a nunc pro tunc decree to validate an otherwise bigamous marriage, the second marriage must follow the nunc pro tunc date. Here the second marriage preceded both the interlocutory decree and the proposed nunc pro tunc date, and there is no claim of any ceremonial marriage other than the one on May 27, 1960.

## II

However, that is not the whole story. In her declarations, Eva claims that, after June 4, 1961, she and William had cohabited and held themselves out to be husband and wife, in the States of Texas and Kansas, both states recognizing so-called common law marriages. █ If that be true, Eva, by the nunc pro tunc decree, could claim the status of a valid common law wife under the laws of either or both of those states, at a time more than one-year prior to William's death.[2]

Marjorie attempts to argue that the claimed cohabitation and repute would not have effected a common law marriage in either state. This is not the case to determine that contention. Eva has shown a sufficient

[2]It is long settled that a common law marriage, valid where contracted, will be recognized as valid in California. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, §§ 28, 29, pp. 4898-4899.)

interest in the matter to permit her to litigate, in an appropriate forum, the validity of the marriages which she here contends existed.

The order is reversed with directions to enter the nunc pro tunc decree as requested.

Jefferson (Bernard), J., and Alarcon, J., concurred.